BEDFORD, Plaintiff in error, v. STATE, Defendant in error.

*No. State 145. Argued October 3, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 658.)

358

For the plaintiff in error there were briefs by *Jacobson, Sodos & Melnick* of Milwaukee, and oral argument by *Jerome D. Krings* of Milwaukee.

For the defendant in error the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HANLEY, J.    Two issues are presented for review:

1.  Did the trial court err in refusing to permit the defendant to testify as to prior specific acts of violence of the deceased for the purpose of showing that the

defendant had reasonable grounds to believe that he was in imminent danger to his life or of great bodily injury?

2. Did the trial court err in refusing to give the jury an instruction on manslaughter, causing the death of another unnecessarily in the exercise of self-defense?

*Evidence of prior specific acts of violence.*

The defendant contends that it was error for the trial court to refuse to permit him to testify as to prior specific acts of violence by the deceased. The trial court ruled that such evidence was inadmissible because there was not a sufficient factual basis to raise the issue of self-defense. Defendant's contention rests upon this court's decision in *McMorris v. State* (1973), 58 Wis. 2d 144, 205 N. W. 2d 559. In *McMorris* this court adopted the rule that ". . . where there is a sufficient factual basis to raise the issue of self-defense, and the turbulent and violent character of the victim is an essential element of the defense, proof should be admitted as to both the reputation of the victim and the defendant's personal knowledge of prior relevant conduct of the victim." (P. 150) This court in *McMorris* further indicated that "[i]n those instances in which the defendant failed to establish a factual basis to raise the issue of self-defense, prior specific acts of violence by the victim would have no probative value." (P. 152)

The only basis for the defendant's claim of self-defense is the defendant's own testimony. Such testimony not only stands uncorroborated in the record, but is directly in conflict with the other evidence adduced in the case.

The defendant's testimony conflicted with the testimony of Thomas Pfeifer, the defendant's friend, and Charles York, the victim's friend. The defendant testified that upon leaving the house, Byron King only pushed the victim once. Pfeifer testified that King pushed the victim three times and then kicked him. The defendant testified that at that point the victim grabbed King by

his neck and lifted him off the ground. Both Pfeifer and York testified that at that point the victim turned and ran toward the corner. At the corner the victim turned and picked up King by the arms. The defendant testified that he first pulled out his knife and slashed the victim across the face when the victim was grabbing at him after throwing down King. Pfeifer testified that the victim was still holding onto King when the victim was cut across the face. Both Pfeifer and York testified that the victim took no aggressive action during the altercation.

The defendant's testimony was in direct conflict with that of the doctor who performed the autopsy on the victim. The defendant testified that he slashed the victim across the face and stabbed him in his stomach and in his chest. However, the doctor testified that the victim had six wounds. There were wounds in the face and chest and the abdomen. In addition, there were two wounds in the left arm and one in the left hand.

From the defendant's own testimony it is established that defendant could have withdrawn from the scene prior to the fatal stabbing but chose not to do so. Both he and King were free from any hold the deceased had on them. Defendant testified that the victim yelled to his companion York, "Charles, they're cutting me." This testimony indicates that the victim was the only one in the position of a self-defender.

Under the circumstances, we are of the opinion that the testimony failed to provide the "sufficient factual basis" required by *McMorris* as a prerequisite to the admission of testimony regarding the defendant's personal knowledge of prior specific instances of violence on the part of the victim. Therefore, the trial court was correct in excluding such testimony.

*Jury instructions.*

The defendant contends that the trial court committed prejudicial error in refusing to grant the requested in-

struction of manslaughter, causing the death of another unnecessarily in the exercise of self-defense. *See:* Sec. 940.05 (2), Stats., and Wis J I—Criminal, Part II, 1140. This is a lesser-included charge of first-degree murder. In addition to the instructions on first- and second-degree murder, the court did give an instruction as to self-defense.

On motions after verdict the trial judge stated that he gave the instruction on self-defense "not because [he] really believed that there was any particular issue on self-defense, but simply because there was some testimony by the defendant, and frankly, the court thought it was leaning over when it ruled in favor of the defendant by including it."

Sec. 940.05, Stats. **"Manslaughter.** Whoever causes the death of another human being under any of the following circumstances may be imprisoned not more than 10 years:

" . . .

"(2) Unnecessarily, in the exercise of his privilege of self-defense or defense of others or the privilege to prevent or terminate the commission of a felony; . . ."

The test for determining when lesser degrees of homicide than that charged are to be submitted to the jury has been clearly stated to be:

"To justify submitting lesser degrees of homicide than that charged in the information, there must be a reasonable ground in the evidence for acquittal on the greater charge and for conviction on the lesser charge." *State v. Anderson* (1971), 51 Wis. 2d 557, 560, 187 N. W. 2d 335.

" 'The key word in the rule is "reasonable." The rule does not suggest some near automatic inclusion of all lesser but included offenses as additional options to a jury. Only if "under a different, but reasonable view," the evidence is sufficient to establish guilt of the lower degree and also leave a reasonable doubt as to some particular element included in the higher degree but not the lower, should the lesser crime also be submitted to the jury.' " *State v. Anderson, supra,* at page 561.

With respect to the application of the above test to the question of submission of an instruction on manslaughter under sec. 940.05 (2), Stats., this court has indicated the following:

"Applying that test to this case, the requested instruction and submission of manslaughter would be proper only if, under some reasonable view, the evidence was sufficient to establish guilt of causing the death of another in the exercise of self-defense. The record must make reasonable a conclusion that the defendant here killed '. . . believing that his act was necessary in self-defense but his belief was unreasonable under the circumstances . . .'" *Day v. State* (1972), 55 Wis. 2d 756, 760, 201 N. W. 2d 42.

Thus, the question presented in this case is whether the record makes reasonable a conclusion that the defendant here killed believing his act was necessary in self-defense. We think that it does not.

As previously pointed out the victim and his companion had departed from the home after being told they were not welcome. Defendant's companion, King, initiated the physical contact upon the victim. The victim attempted to escape by turning and running down the street. King pursued Lynk down the street. Lynk turned around, grabbed King and held King up off the ground either by King's biceps, shoulders or neck. There is no testimony of any aggressive action by the deceased. In fact, King did not testify at the trial. Two witnesses testified that while King was being held by the deceased, the defendant went close to Lynk with his arms moving toward Lynk. When these two witnesses got closer to the scene they observed that Lynk's face was cut.

Defendant's own testimony shows that both the defendant and King had the opportunity to take evasive or less excessive means of protecting themselves. According to defendant's testimony, at one point prior to the

fatal stabbing, both he and King were free of any grasp of deceased.

Under the circumstances of this case we find there was no error in the trial court's refusal to instruct the jury on unnecessarily causing death in the exercise of the privilege of self-defense. The conviction is affirmed.

*By the Court.*—Judgment affirmed.